## Society for Social Responsibility in Science Incorporation

*T. Sidney Cadwallader, 2nd,* for applicants.
*Robert W. Valimont,* for protestants.

628

BIESTER, J., March 20, 1959.—Applicants, the Society for Social Responsibility in Science, seek a charter under the provisions of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, as amended, 15 PS §2851 et seq.

Upon the presentation of the proposed articles of incorporation on the day to which they were advertised, counsel on behalf of the Ninth District of the American Legion appeared before the court as a protestant. The court withheld action on the application, acceding to the request of counsel to be afforded an opportunity to consult with applicants' counsel in order that additional information might be procured as to the proposed purpose of the corporation. Evidently these consultations proved unfruitful and the court was advised that the protestant would continue to oppose the granting of the charter. Thereupon in conformity with article II, sec. 207, 15 PS §2851.207, of the Nonprofit Corporation Law, the court referred the matter to a master· "to make report as to the propriety of granting the application." The master has now filed his report, in which he recommends that the charter be granted. To this report the protestant has filed exceptions to a number of findings of fact of the master, to certain of his conclusions of law and to his failure to find certain additional facts.

The function of the court is set forth in Conversion Center Charter Case, 388 Pa. 239, 243. In order to justify a granting of the charter the court must satisfy itself that the purposes set forth in the proposed articles are "lawful and not injurious to the community." Article II, sec. 203(3), 15 PS §2851.203, requires that the articles of incorporation shall set forth "a precise and accurate statement of the purpose or purposes for which it is to be formed." This provision must be rigidly complied with by the incorporators for, if not complied with, the court is unable to determine

whether the purposes are in fact lawful and not injurious to the community.

The purposes of the proposed corporation as set forth in its application for charter are as follows: (a) To foster throughout the world a functioning cooperative tradition of personal moral responsibility for the consequences to humanity of professional activity, with emphasis on constructive alternatives to militarism, to embody in that tradition the principle that the individual must abstain from destructive work and devote himself to constructive work, drawing the line between the two according to his own moral judgment, to ascertain through open and free discussion the boundary between constructive and destructive work to serve as a guide for individual and group decisions and action; (b) to establish and operate an employment service for locating positions for those individuals whose convictions necessitate leaving or refusing destructive work, to assist those individuals who suffer economic or legal difficulties because of the principles which may require abstaining from participation in destructive activity; (c) to promote, counsel and assist in the setting up of constructive projects and activities; (d) to carry on an educational program for spreading the knowledge of and interest in the purposes, principles and activities of the Society for Social Responsibility in Science, to provide for open and democratic discussions of constructive action, especially as it concerns scientific workers in solving the broad problems of peace and war; (e) to stimulate the formation of similar groups in other fields of human endeavor.

Much of the testimony adduced before the master was devoted to an explanation and interpretation of the purposes of the corporation. If section 203(3) had been carefully complied with the court would or should know from a reading of the purposes of the proposed

corporation exactly and precisely what its objectives are. This we are unable to do.

The very foundation of the purposes is contained in clause (a), the other clauses, to wit, (b) to (e) inclusive, being in a sense a superstructure, spelling out the method by which the fundamental purpose is to be effectuated.

To repeat the purpose set forth in clause (a) it is, in part, "to foster throughout the world a functioning cooperative tradition of personal moral responsibility for the consequences to humanity of professional activity, with emphasis on constructive alternatives to militarism." We are unable to garner the precise purpose of the corporation from a careful reading of this phraseology. Although from an examination of the other purposes, we can visualize an indistinct form of what is intended, this should not be required of us. Perhaps the master was correct when he arrived at the conclusion, after hearing testimony, that the principle object underlying the purposes expressed in clause (a) is "to get the individual scientists to recognize his obligation to preserve life and benefit humanity on a high level similar to the obligation of the physician as found in the Hippocratic Oath," but if this is the purpose the charter should so state. Without such explanation and testimony, however, a reader of the basic purpose might conclude that anti-vivisection or improvement of the educational program was encompassed in the primary and basic phrase.

Clause (a) also contains the provision that there should be embodied in the tradition referred to in the first phrase "the principle that the individual must abstain from destructive work and devote himself to constructive work, drawing the line between the two according to his own moral judgment." Here we are confronted with a problem in semantics, for certain work is destructive by its very nature, and the "draw-

ing the line between the two according to his own moral judgment" would not change that type of work which is included within the definition of destructive from becoming anything else. Thus those devoted to the demolition of buildings would be engaged in destructive work no matter what might be the "moral judgment" of the person who surveys the razed building. In clause (c) it is said that one of the purposes is "to promote, counsel and assist in the setting up of constructive projects and activities." In a broad and liberal sense such a purpose would include all of man's activities which might inure to the benefit of his fellow man. It is obviously so vague, uncertain and nebulous as to be almost the antithesis of being precise and exact.

Many other examples of the lack of preciseness of the purposes might be herein set forth, but we deem what we have heretofore said to be sufficient to illustrate the failure of applicants to comply with that provision of the corporation law which requires that the articles contain a precise and accurate statement of the purpose or purposes for which it is to be formed.

Many of our lower courts have passed upon this necessity. A very full and comprehensive discussion of the necessity of clarity of purpose is contained in Citizens League of Wheatfield Township, 65 D. & C. 70, and an extended discussion of the problem by this court would be largely repetitious of what is contained in that case. Other cases dealing with the same subject are: In re Incorporation of National Legion American People, 38 Luz. 78; In re Application of Jocarrd Club, 101 Pitts. L. J. 203; Victory Hill Social Centre Incorporation, 72 D. & C. 326. As was said in Philadelphia Labor's Non-Partisan League Club's Application for Incorporation, 328 Pa. 465, 469:

"The applicants must satisfy the court as to the propriety of its certificate, 'otherwise', in the language of the act 'the court shall refuse the application.' It should

always be borne in mind that in charter applications the applicants are asking the court for a special privilege as to the propriety of granting which, its conscience must be satisfied."

For the reasons hereinabove set forth the court sustains those exceptions to the report of the master in which he concludes that the purposes of the corporation are accurately and precisely expressed. Since this is our conclusion it is not necessary for us to make any definitive order as to whether the purposes are lawful and not injurious to the community, for such a conclusion cannot be reached until section 203(3) is complied with. The following order is therefore made without prejudice to the right of applicants to present new articles of incorporation or present amendments to the present application, whichever they may deem more appropriate.

*Order*

And now, to wit, March 20, 1959, upon consideration of the articles of association of the proposed corporation named Society for Social Responsibility in Science, those exceptions in which the protestant complains of the master's finding in discussion or elsewhere that the purposes of the corporation are accurately and precisely expressed are sustained and the application for charter refused. Costs are to be borne by applicants.